UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **DAWN WILBERS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:20-CV-735-SNLJ |
| | ) |
| **KILOLO KIJAKAZI,** [1] | ) |
| **Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

Plaintiff Dawn Wilbers applied for disability insurance benefits under Title II of the Social Security Act. Her application was denied, and she appealed the denials to an administrative law judge ("ALJ"). After a hearing, the ALJ found plaintiff was not disabled, and plaintiff now seeks judicial review [#15][2]. The defendant filed a response brief, but no reply was filed, and the time for doing so has expired.

As discussed below, the Commissioner's decision is supported by substantial evidence on the record as a whole and is affirmed.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

[2] The Court notes that plaintiff sought and received leave to file an "oversized" brief. The brief totaled 17 pages instead of the 15 pages allowed by the local rules, but the brief was single spaced. Double spacing, which is required by Local Rule 2.01, would have rendered the brief over 30 pages long.

1

I.      Background

Plaintiff Wilbers was born in 1968 and was 45 years old when she alleges she became disabled on June 7, 2013.  She has a high school education and had worked as a customer services supervisor and as an administrative assistant. She alleges disability primarily based primarily on diabetes, high blood pressure, fibromyalgia, spinal stenosis, degenerative disc disease, neuropathy, and obesity.  Further relevant background will be discussed as appropriate below.

On April 29, 2019, the ALJ issued her opinion.  The ALJ's decision recognized that plaintiff had the severe impairments degenerative disc disease status post fusion and decompression/spondylosis, cubital tunnel syndrome with stenosing tenosynovitis status post release, fibromyalgia, obesity, prothrombin promoter-gene mutation, and mild stroke. [Tr. 14.]

The ALJ stated that she found plaintiff's impairments could be expected to cause the alleged symptoms, but that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record…" [Tr. 16.]  Plaintiff appeals.

II.     Disability Determination—Five Steps

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his

2

previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(3)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Bladow v. Apfel*, 205 F.3d 356, 358–59, n.5 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)( v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III.   The ALJ's Decision

At Step One, the ALJ found plaintiff met the insured status requirements through the relevant period, and she had not engaged in substantial gainful activity since the alleged onset date. At Step Two, the ALJ found plaintiff suffers from the following severe impairments: degenerative disc disease status post fusion and decompression/spondylosis, cubital tunnel syndrome with stenosing tenosynovitis status post release, fibromyalgia, obesity, prothrombin promoter-gene mutation, and mild stroke. At Step Three, the ALJ determined plaintiff's severe impairments did not meet or equal a listed impairment.

Next, in Step Four, the ALJ determined plaintiff's RFC. The ALJ found that plaintiff

> has the residual functional capacity to perform sedentary work as defined in 20 C.F.R 404.1567(a) except the claimant should be afforded the opportunity to alternate between sitting and standing at the work station every 60 minutes then

5

change position for 3-5 minutes while remaining at the workstation and on task. She never climb ladders, ropes, or scaffolds. She should never crawl, but is able to frequently climb ramps and stairs, balance, stoop, kneel and crouch. The claimant is able to occasionally reach overhead using her left upper extremity, and frequently reach in all other directions. She is able to frequently handle, finger and feel with the left upper extremity. The claimant has no restrictions with her right upper extremity. The claimant should never work at unprotected heights or with moving mechanical parts, but can occasional[ly] work in vibration.

[Tr. 15.]

The ALJ determined that plaintiff could perform her past relevant work as a customer service supervisor and administrative assistant because it did not require the performance of work-related activities precluded by the claimant's RFC. As a result, the ALJ found that the plaintiff is not disabled, and the ALJ did not need to move on to Step Five.

## IV.    Standard of Review

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is less than a preponderance of the evidence but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (alteration in original) (quoting *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)). The Court must also consider any evidence that fairly detracts from the Commissioner's decision. *Id.* "[I]f there is substantial evidence on the record as a whole, [the Court] must affirm the administrative decision, even if the record could also have

supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992). In reviewing whether the ALJ's decision was supported by substantial evidence, this Court does not substitute its own judgment for that of the ALJ—even if different conclusions could be drawn from the evidence, and even if this Court may have reached a different outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

## V.     Discussion

Plaintiff argues that her case should be remanded for seventeen reasons. The Court addresses the arguments below and combines them where appropriate.

First, plaintiff contends that the ALJ erroneously failed to find that her spinal disease met and/or equaled the criteria of "Listing 1.04," found at 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04.   The "listings" describe "for each of the major body systems [the] impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925(a).  The ALJ found that plaintiff did not meeting Listing 1.04 [Tr. 14-15]. Plaintiff's entire argument here consists of one line:  "Per the transcript Listing 10.04 is met." [#15 at 10.]  She neither identifies which subsection of Listing 1.04 she means nor explains what specific medical findings would meet any of the subsections.

"To meet a listing, an impairment must meet all of the listing's specified criteria." *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010) (quoting *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004)). To meet Listing 1.04, plaintiff must demonstrate a spinal disorder with nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04.  The Listings for 1.04A, 1.04B, and 1.04C each

7

require specific findings not found in the record here.  As plaintiff made no specific arguments as to why the ALJ errored

Next, plaintiff argues the ALJ erroneously afforded "little, if any" weight to the opinion of plaintiff's nurse practitioner, Christopher Hemmer, D.N.P..  Although Hemmer has a doctorate, the ALJ properly found that, as a nurse practitioner, he was not an acceptable source under the regulations for claims filed before March 27, 2017.  *See* 20 C.F.R. § 404.1502.  Hemmer provided several letters stating that plaintiff was incapable of gainful employment in any type of laborious activities, could lift 10 pounds, and that she could not sit or stand for more than one or two hours.  The ALJ found the letters somewhat consistent with plaintiff's history of back surgeries and, consistent with Hemmer's statements, the ALJ limited plaintiff to sedentary work but that she would need to alternate sitting and standing every 60 minutes.

Third, plaintiff argues that the ALJ erroneously relied on the opinion of a non-examining physician.  Plaintiff's sole argument is that the non-examining physician in this case, Dr. Moore, gave his opinion "prior to the last treatment" and thus did not have access to the whole record.  The ALJ gave some weight to Dr. Moore's opinion because it was generally consistent with the medical evidence reviewed.  *See Twyford v. Comm'r, Soc. Sec. Admin.*, 929 F.3d 512, 518  (8th Cir. 2019) (citing *Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007)) (holding that ALJ may afford significant weight to the opinion of a State agency reviewing psychologist where the opinion is consistent with the evidence.).  As for plaintiff's argument that Moore did not see the whole record, the ALJ properly considered the later medical records and found plaintiff was restricted to sedentary rather than light

8

work as proposed by Dr. Moore.  Thus, the ALJ properly evaluated Dr. Moore's medical opinion and included greater limitations based on later submitted medical records.

Fourth, plaintiff argues the ALJ erred by relying on the vocational expert's response to a hypothetical question that did not include all of the functional limitations supported by the record.  Specially, plaintiff argues the ALJ erred by not including "'down' time" in the hypothetical. Although the hypothetical question must set forth with reasonable precision the claimant's impairments, it need only include those impairments and limitations found supported by the record.  *See, e.g.*, *Blackburn v. Colvin*, 761 F.3d 853, 860-61 (8th Cir. 2014) ("A hypothetical is sufficient if it includes the impairments supported by substantial evidence and found credible by the ALJ.").  The impairments hypothesized by the ALJ were supported by substantial evidence.

Fifth, plaintiff contends that the ALJ's finding that plaintiff did not allege any side effects from her medications was not based on substantial evidence.  This Court disagrees. Plaintiff alleged medication side effects in the hearing, but she repeatedly denied side effects to her medical providers, and there is no indication that plaintiff ever requested a medication change due to side effects.  [*E.g.*, Tr. 251, 299, 647-48, 651-52, 655, 663, 665-66, 674-75, 679, 872, 874, 878, 886, 889, 891, 893, 895, 897, 899, 902, 906, 911, 920, 926.]

Sixth, plaintiff complains that the ALJ "ignored" witness statements describing plaintiff's limitations.  Those statements consisted of letters from her sister, her parents, her husband, and an employer. The ALJ explicitly considered the letters and recognized that the third party witnesses were not acceptable medical sources.  The ALJ also found the allegations in the letters about frequent daily naps unsupported by medical records because

9

plaintiff never reported the need to nap to her medical providers.  In addition, the ALJ found the statements inconsistent with plaintiff's own admissions and, in particular, noted the sister's statement the plaintiff could lift only 5 pounds but plaintiff admitted she could lift 10 pounds.  As such, the ALJ properly considered the witness statements and found them inconsistent with the record as a whole.

Seventh, plaintiff argues that the ALJ failed to develop the record, including, e.g., failing to order a consultative examination, failing to order a psychological examination, and failing to ask more questions about the demands of plaintiff's past relevant work. The Eighth Circuit Court of Appeals has rejected the argument that the ALJ failed to adequately develop the record because it did not contain an opinion from a consultative doctor regarding a claimant's work-related limitations when the ALJ expressly considered the opinions of the state agency medical consultants.  *Buford v. Colvin*, 824 F.3d 793, 797 (8th Cir. 2016); *Julin v. Colvin*, 826 F.3d 1082, 1089 (8th Cir. 2016).  As discussed above, the ALJ properly considered Dr. Moore's opinion in evaluating plaintiff's impairments.

The record is also fully developed regarding plaintiff's past work demands. Notably, it is plaintiff's burden to show that she has a disabling condition that precludes a return to her prior work. *See Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010). The record includes information regarding plaintiff's past relevant work via plaintiff's Work History Report as well as through plaintiff's testimony and other evidence.  The ALJ also made explicit findings regarding the mental and physical demands of plaintiff's past relevant work by referring to specific job descriptions in the *Dictionary of Occupational Titles* associated with the claimant's past work. Finally, the vocational expert responded to a hypothetical

question, that incorporated the same limitations as the RFC, testifying that such an individual could perform plaintiff's past relevant work as a customer services supervisor and an administrative assistant.  [Tr. 15, 19, 79-80.]  If an individual can perform her past relevant work, either as she performed it, or as the work is performed in the national economy, she is not disabled.  *See Wagner v. Astrue*, 499 F.3d 842, 853 (8th Cir. 2007) (citing *Jones v. Chater*, 86 F.3d 823, 825 (8th Cir. 1996)); *Lowe v. Apfel*, 226 F.3d 969, 973 (8th Cir. 2000).  The ALJ's determination that plaintiff could perform past relevant work was well-supported.

Eighth, plaintiff argues that the vocational expert testimony conflicted with the "grids" or the medical-vocational guidelines.  However, the ALJ found plaintiff not disabled at step four of the evaluation process because she could perform her past relevant work.  As a result, the guidelines are not applicable to this case.  *See, e.g.*, *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).

Finally, plaintiff contends that the RFC does not provide a function-by-function analysis of her abilities on a sustained basis, and that the ALJ's conclusions regarding plaintiff's performance of sedentary work were not supported.  The ALJ properly determined plaintiff's ability to perform a range of sedentary work as defined in the regulations.  [Tr. 15.]  The regulations define sedentary work as that which involves lifting 10 pounds occasionally and less than 10 pounds frequently, sitting for 6 hours, and standing and walking for 2 hours.  20 C.F.R. § 404.1567(a); Social Security Ruling 96-9p.  The ALJ also found that plaintiff needed to alternate between sitting and standing every 60 minutes, then change position for 3 to 5 minutes while remaining on task at the workstation.  [Tr.

11

15.] Plaintiff could never crawl or climb ropes, ladders, or scaffolds, but could frequently balance, stoop, kneel, crouch, and climb ramps and stairs. [*Id.*] She could occasionally reach overhead with her left arm and frequently reach in all other directions. [*Id.*] She could frequently handle, finger, and feel with her left arm. [*Id.*] Plaintiff could have occasional exposure to vibration, but no exposure to unprotected heights or moving mechanical parts. [*Id.*]

Where all of the functions that the ALJ specifically addressed in the RFC were those in which she found a limitation, a court can reasonably believe that those functions that she omitted were those that were not limited. *See Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003). The ALJ did not need to make an explicit finding regarding every possible nonexertional limitation if the ALJ's finding is supported by the record as a whole. *See Nash v. Comm'r of Soc. Sec. Admin.*, 907 F.3d 1086, 1090-91 (8th Cir. 2018) (citations omitted). Although this Court reviews the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but the ALJ is not required "to mechanically list and reject every possible limitation." *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). The ALJ considered the record as a whole, including plaintiff's subjective complaints [Tr. 14-19] and determined that they were not consistent with he record as a whole, including the medical opinions, clinical findings, and medical treatment. The ALJ's consideration of the subjective aspects of plaintiff's complaints comported with the regulations at 20 C.F.R. § 404.1529 (2019), and the framework set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). If an ALJ explicitly discredits a claimant's testimony and gives good reasons for doing so, the court will normally defer to the ALJ's determination. *See Wildman v.*

12

*Astrue*, 596 F.3d 959, 969 (8th Cir. 2010). Here, substantial evidence supports the ALJ's determination that plaintiff's allegations were not fully supported by the record as a whole.

## VI. Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *McNamara*, 590 F.3d at 610. Having found the ALJ's conclusions were supported by substantial evidence and that legal standards were correctly applied, this Court affirms the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint [#1] is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

Dated this 27th day of September, 2021.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE